DECISION
In Order Nos. 99-526-A, 99-537-A and 99-538-A, in the above-entitled case, the Rhode Island Supreme Court remanded this matter to this Court for determination of attorney's fees and costs to be awarded to plaintiffs.
 FACTS AND TRAVEL
On March 5, 1997, Superior Court Justice Francis J. Darigan, Jr. issued a decision in the matter of Capital Properties, Inc. v. City of Providence, C.A. No. 88-1654, 1999 R.I. Super. LEXIS 24. The case involved a taking pursuant to R.I.G.L. § 37-6-1 et seq. of property located in the Capital Center Special Development District of Providence and owned, at the time, by Capital Properties, Inc. ("CPI"). In his decision, Judge Darigan valued the property at $110 per square foot and applying this figure, entered judgment in favor of CPI in the amount of $10.65 million owed it by the State of Rhode Island. Of the total amount awarded, defendant City of Providence ("the City") was responsible for half of the award or $5.32 million as a result of an agreement called the Master Property Conveyance Contract ("MPCC"). The MPCC was entered into in 1982 by the City, the State of Rhode Island, the Providence and Worcester Realty Company and Amtrak in order to facilitate a number of land conveyances in the Capital Center Special Development District. The purpose of the conveyances was the development of that area of the City through the River Relocation Project. See Capital Properties, Inc. v. City of Providence, C.A. No. 88-1654, 1999 R.I. Super. LEXIS 24. The MPCC made the City liable for half of an award of this type.
On August 20, 1997, Providence Mayor Vincent A. Cianci, Jr. ("Cianci"), in response to Judge Darigan's decision, stated in The Providence Journal that the judgment would "boomerang against the company . . . and produce a windfall for Providence." Gregory Smith, Cianci Expects Last Laugh in $5.2 Judgment Against City, THE PROVIDENCE JOURNAL, August 20, 1997. The article went on to describe how Cianci intended to assess $9 million dollars in back taxes against CPI resulting from the new valuation assigned to the land by Judge Darigan. See id. Cianci claimed that as a result of the court-ordered $110 per square foot figure, the land in question had gone under-assessed for tax purposes since 1990, and Cianci intended to collect those taxes owed to the City by CPI. Id.
The City revalued said property for tax purposes and assessed six years of back taxes. In addition, the City went on to assess additional taxes on other CPI properties in the Capital Center District. CPI opposed this additional assessment of back taxes in Capital Properties, Inc. V. City of Providence, et al, Nos. C.A. 97-4199, 98-5202, 99-4974, 98-6254, 1999 WL 551319 (R.I. Super.). Furthermore, in a less than subtle effort to disguise the questionable nature of its treatment of CPI, the City went so far as to increase the taxes of four other owners of land in the same district as the CPI property.
In addition to the questionable motive behind the City's assessment of taxes and back taxes to the other landowners, the assessment was suspect because it was based on an erroneous revaluation of the landowners' properties by the City. Instead of conducting a statutorily-required citywide revaluation, the City wrongfully applied Judge Darigan's $110 per square foot figure to the landowners' properties. However, that figure was fashioned specifically for the property at issue in Capital Properties, Inc. v. City of Providence, C.A. No. 88-1654, 1999 R.I. Super. LEXIS 24 and should not have been blindly applied to any other property.
The four gratuitously-targeted landowners include Union Station Associates ("Union"), East Office Building Associates, L.P. ("East"), Parcel One Development Associates, Inc. ("Parcel") and Commerce Center Associates, LLC ("Commerce") (collectively referred to as "the landowners"). The landowners are the plaintiffs in the cases at bar. Ultimately, their properties in the Capital Center District were burdened with liens for the additional taxes in aggregate totaling $3,565,971.72. The landowners sought initial relief in these cases on November 14, 1997 when they filed their complaints seeking legal and equitable relief from an excessive, illegal and/or unconstitutional tax assessment imposed by defendant.
On July 13, 1999, Judge Needham issued a decision in Capital Properties, Inc. V. City of Providence, et al, 1999 WL 551319 (R.I. Super.) finding that the taxes and back taxes assessed to CPI were void and illegal and the resulting tax liens against CPI must be removed. In a footnote Judge Needham referenced the possibility of additional illegal tax assessments against other landowners in the Capital Center District stating
 "The Court notes that other landowners of real property located in the Capital Center District also may have been assessed real estate taxes solely based upon the $110.00 per square foot fair market value determination of the Superior Court; however, the parties do not present sufficient facts to support such a conclusion. This Court concludes that such factual proffers would not change the legal determinations contained herein." Capital Properties, Inc. v. City of Providence, et al, 1999 WL 551319 *12 (R.I. Super.).
The Court found that the taxes were wrongfully assessed against CPI based on the use of the figure previously-ordered by Judge Darigan. The Court expunged the reassessments and permanently enjoined the City from collecting any taxes based on the reassessments. Judge Needham found "the assessments made by the City against CPI to be selective, arbitrary and illegal." Capital Properties, Inc. V. City of Providence, et al, 1999 WL 551319 *12 (R.I. Super.). Judge Needham further ordered the City to comply with the judgment in that case and awarded CPI all costs and attorneys fees resulting from the City's illegal tax assessment of CPI's property in the Capital Center District.
In 1999, the City issued tax bills for that year, assessing taxes against the landowners based on the $110 figure found by Judge Darigan to be the value of the property in Capital Properties, Inc. v. City of Providence, C.A. No. 88-1654, 1999 R.I. Super. LEXIS 24. The landowners attempted unsuccessfully to bring this tax error to the attention of the City Tax Collector, pointing out that Judge Needham in Capital Properties, Inc. V. City of Providence, et al, 1999 WL 551319 (R.I. Super.) had declared tax assessments based on the $110 figure illegal as against CPI. The landowners hoped that the City would withdraw the taxes assessed against them based on Judge Needham's reasoning in Capital Properties, Inc. V. City of Providence, et al, 1999 WL 551319 (R.I. Super.).
The City persisted in its attempts to collect these taxes from the landowners. The landowners then sought relief by Writs of Mandamus. Those Writs were granted by Judge Needham on November 26, 1999. The Writs, along with Supplemental Orders from this Court directed that the City issue municipal lien certificates for the expungement of the illegal taxes and that the City "otherwise perform those duties and comply with the lawful Judgment of this Court dated July 9, 1999 and the Decision dated July 13, 1999 entered in the case entitled Capital Properties, Inc. v. City of Providence, et al., C.A. Nos. 98-6254, 88-1654, 97-4199, 98-5202, 98-2525." Union Station Associates, et al. V. Thomas Rossi, et al., C.A. No. 97-5511, November 26, 1999, Needham, J. (Order). In other words, Judge Needham applied his July 13, 1999 decision in Capital Properties, Inc. v. City of Providence, et al., C.A. Nos. 98-6254, 88-1654, 97-4199, 98-5202, 98-2525 to the plaintiffs at bar. Judge Needham further ordered the landowners to submit a demand for attorney's fees and costs related to the illegal tax assessments and prosecution of the ensuing claims.[1] The City appealed this order before the landowners could assert their claims for attorney's fees and costs.
On December 2, 1999 the Rhode Island Supreme Court affirmed Judge Needham's original ruling in the CPI litigation. The Court adopted Judge Needham's decision as its own, and the following day the Court denied the City's application for a Stay of Mandamus in this case citing its decision from the day before. On December 15, 1999, the Tax Collector issued clean municipal lien certificates but the City continued to make new and different arguments to the Court in this case, claiming among other things that the Supreme Court decision did not apply to the landowners.
On March 21, 2000 the Supreme Court remanded the matter to Judge Needham for a final determination regarding attorney's fees as well as for damages resulting from the City's violation of the landowners' civil rights. The City continued to maintain that it did not concede any right to collect back taxes on the illegal tax when it issued the clean municipal liens. The City continued to persist in its appeal on the petitions for Mandamus. Due to the untimely death of Judge Needham, these matters are now before this Court for determination of the attorney's fees and costs to be awarded to plaintiffs.
 DISCUSSION
In Rhode Island, attorney's fees are awarded "consistent with the services rendered, that is to say, which is fair and reasonable." Palumbo v. United States Rubber, 229 A.2d 620, 622 (R.I. 1967). The Court in Palumbo went on to state that
 "What is fair and reasonable depends of course on the facts and circumstances of each case. We consider the amount in issue, the questions of law involved and whether they are unique or novel, the hours worked and the diligence displayed, the result obtained, and the experience, standing and ability of the attorney who rendered the services. Each one of these factors is important but not one is controlling." Id at 622-623.
 AMOUNT IN ISSUE
In this case, plaintiff landowners were initially forced to seek legal protection of their rights as a result of the City's retaliatory illegal taxing scheme resulting in $3,565,971.72 of liens to the landowners' properties. Plaintiffs assert that $3.5 million in liens would have financially ruined them as well as tainted their tax records, thus necessitating aggressive representation in this matter. This Court agrees that plaintiffs were placed in a position where aggressive legal action was necessary to preserve their legal rights against the illegal actions taken by the City and the subsequent threat of financial loss reaching $3.5 million.
 UNIQUE ISSUE OF LAW
Plaintiffs' attorneys assert, and this Court agrees, that they were called upon to address unique issues of law due to the extensive statutory interpretation involved with the preparation of their case. Their analysis included, among other things, finding legal definitions for terms such as "error" and "omit" in the context of R.I.G.L. §44-5-23. Plaintiffs' attorneys were further required to interpret property tax statutes which plaintiffs' attorneys contend are difficult to interpret due to their arcane nature.
Plaintiffs' attorneys claim that their task was made more difficult by the fact that defendant "stood the tax statutes on their head and loosely applied Supreme Court precedent at every stage of this litigation." Memorandum of Law in Support of Plaintiffs' Motion to Set Attorney's Fees, p. 12. As a result, plaintiffs' attorneys were unduly challenged to find cases which addressed "the City's contorted positions." Id. This Court notes that plaintiffs' counsel, on every occasion, met the unnecessary challenge presented to them by defendant with well-reasoned arguments tailored as best as possible to the warped positions of the City.
 HOURS WORKED AND DILIGENCE DISPLAYED
Due to the contemptuous behavior displayed by the City throughout this litigation, plaintiffs' attorneys were forced to expend countless, (but in a literal sense, counted), hours addressing skewed legal arguments presented to them through the warrantless motions filed by defendant. Plaintiffs' attorneys' billing statements from the time period between April 7, 1997 and March 20, 2000 indicate that 21 time-keepers worked on this case, with hourly rates ranging from $30 to $235 per hour. The varying hourly billing rates are presumably dependent on the different areas of expertise and amount of experience of each attorney or time-keeper. The billing statements show that a total of 1,030.8 hours were billed to plaintiff Union in this case. The total amount charged in attorneys' fees to Union for that time period was $199,680, which reflects all costs associated with the preparation of this case including such expenses as costs resulting from computerized legal research and photocopying. The total amount charged in attorneys' fees to plaintiff Commerce for the same time period was $52,305.35 reflecting 331.7 billable hours. The billing statements for the time period between March 1, 2000 and October 30, 2000 indicate that 268.2 hours were billed to Union totaling $38,037.14 and 276.2 hours were billed to Commerce totaling $26,217.50.
Although plaintiffs' attorneys often found themselves attempting to address needless questions as a result of defendant's efforts to delay the proceedings in this case, plaintiffs' attorneys worked diligently to meet the many obligations created by defendant's unwarranted filings.
 THE RESULT OBTAINED
After two years of litigation in this matter, the landowners have been successful, and the best result has been obtained on their behalf. Due to the efforts of plaintiffs' attorneys, the taxes assessed by the City were found to be illegal and void by the trial court. Plaintiffs further contend, and the Court concurs, that their attorneys facilitated the completion of many real estate transactions that would "otherwise have been frustrated by the City's illegal actions." Memorandum of Law in Support of Plaintiffs' Motion to Set Attorney's Fees, p. 14. The landowners are no longer responsible for the $3.5 million worth of wrongful liens against their property or the back taxes illegally assessed by the City. This positive outcome was the result of nearly 2,000 hours of work by plaintiffs' attorneys at an average of $150 per hour. Ultimately, plaintiffs' attorneys achieved this result at a cost of approximately $300,000.
 DEFENDANT'S MISCONDUCT
The Rhode Island Supreme Court has considered the nature of a party's behavior when deciding whether or not to award attorney's fees. The Court has held that
 ". . . `Bad faith' that justifies an award of attorney's `fees may be demonstrated by showing that a [party's] obstinacy in granting a plaintiff his clear legal rights necessitated resort to legal action with all the expense and delay entailed in litigation.'" Limoges v. Eats Restaurant, et al., 621 A.2d 188, 190 (R.I. 1993) (quoting Quill Co. V. A.T. Cross Co., 477 A.2d 939, 944 (R.I. 1984) (citations Eliminated).
Even after Judge Needham's decision in Capital Properties, Inc. v. City of Providence, et al., C.A. Nos. 98-6254, 88-1654, 97-4199, 98-5202, 98-2525 where the same tax issues were decided, the City persisted in 1999 in its efforts to collect the illegal taxes from the landowners. On November 26, 1999 Judge Needham granted the landowners Writs of Mandamus and applied his decision in Capital Properties, Inc. v. City of Providence, et al., C.A. Nos. 98-6254, 88-1654, 97-4199, 98-5202, 98-2525 to the landowners, declaring the City's tax assessments illegal, ordering the removal of the resulting tax liens and permanently enjoining the City from collecting the illegal taxes. Even so, the City was not deterred from its attempts to collect these taxes and appealed Judge Needham's order to the Rhode Island Supreme Court.[2]
The facts illustrate the subsequent hoops through which the plaintiffs were made to jump in order to obtain enforcement of the court orders. Incidences of defendant's misbehavior and bad faith attempts to thwart the orders of this Court do not bear repetition here. The travel of this case is indicative of the inappropriate incentives behind defendant's excessive pleadings. It is defendant's unconscionable performance through its continued assertion of baseless arguments and appeals that further warrants the award of all of plaintiffs' attorneys fees and costs incurred in their efforts to defend their legal rights against the tedious and arbitrary attack by the City.
The extensive legal battle that plaintiffs were forced to mount in order to protect their legal rights was the direct result of the City's illegal taxing scheme and its subsequent evasion of the numerous court orders in these cases. Clearly the City's bad behavior and thinly-veiled attempts to delay the proceedings of this litigation rise to the level of bad faith discussed by the Rhode Island Supreme Court in Limoges.
After careful review of the arguments submitted by the parties as well as the extensive record in these cases, this Court awards plaintiffs all attorney's fees and costs resulting from this litigation, totaling $316,239.99, in accordance with plaintiffs' counsel's affidavits.[3]
Plaintiffs' counsel shall present an order which shall be settled upon notice to defendant's counsel.
[1] Judge Needham's Order was self-effectuating to the extent that it expunged the taxes assessed by the City against the landowners nunc pro tunc.
[2] On December 2, 1999 the Rhode Island Supreme Court affirmed Judge Needham's original ruling in the CPI litigation. The Court adopted Judge Needham's decision as its own, and the following day the Court denied the City's application for a Stay of Mandamus in this case citing its decision from the day before.
[3] The Court notes that defendant was given the opportunity to file an objection to the reasonableness of plaintiffs' assertion of attorneys' fees and costs. The defendant has filed no such objection.